UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| QUANELL SPEARMAN,<br>    Plaintiff,<br><br>v.<br><br>JOEL IDE, et al.,<br>    Defendants. | :<br>:<br>:<br>:   Civil No. 3:17-cv-543(AWT)<br>:<br>:<br>: |

**RULING ON MOTION FOR SUMMARY JUDGMENT [ECF No. 48]**

The plaintiff, Quanell Spearman, commenced this civil rights action pro se. The defendants, Joel Ide, Lou Renzi and Paul Rousseau, have filed a motion for summary judgment. For the reasons that follow, the motion for summary judgment is being granted as to the claims against defendant Ide and denied as to the claims against defendants Renzi and Rousseau.

**I.  LEGAL STANDARD**

A motion for summary judgment may be granted only where there are no issues of material fact in dispute and the moving party is therefore entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; Redd v. New York Div. of Parole, 678 F.3d 166, 173-74 (2d Cir. 2012). "When the nonmoving party will bear the burden of proof at trial, the moving party can satisfy its burden at summary judgment by 'pointing out to the district court' the absence of a genuine dispute with respect to any essential element of its opponent's case: 'a complete

failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" Cohane v. National Collegiate Athletic Ass'n, 612 F. App'x 41, 43 (2d Cir. 2015) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  He cannot "'rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.'" Robinson v. Concentra Health Servs., 781 F.3d 42, 34 (2d Cir. 2015) (citation omitted).  He must present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).  Although the court reads pro se papers liberally and interprets them to raise the strongest arguments they suggest, Willey v. Kirkpatrick, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and are insufficient to oppose a properly supported motion for summary judgment. Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

## II. **FACTS**[1]

Defendants Rousseau and Renzi currently work in the Commissary Warehouse, located at Cheshire Correctional Institution. Defendant Ide retired from the Department of Correction on January 1, 2016, and had no involvement in terminating the plaintiff's employment in the commissary.

Prior to the incident underlying the remaining claims in this action, the plaintiff had submitted many complaints and grievances regarding the commissary's refusal to refund to him the purchase price for an electronic game. Correctional officials had determined that if inmates wished to possess the game, the camera, microphone and internet capability in the game had to be disabled.

---

[1] The facts are taken from the parties' Local Rule 56(a) Statements and the exhibits. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party. Each admission or denial must include a citation to an affidavit or other admissible evidence. In addition, the opposing party must submit a list of disputed factual issues. D. Conn. L. Civ. R. 56(a)2 and 56(a)3. The defendants informed the plaintiff of this requirement. ECF No. 48-6. In his Local Rule 56(a)2 Statement, the plaintiff indicates whether he admits or denies the facts set forth by the defendants but does not provide any citations to admissible evidence to support the denials. Thus, the defendants' facts are deemed admitted. See D. Conn. L. Civ. R 56(a)1 ("Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact.").

3

On October 19, 2016, Commissary Operator Jose Leal told defendants Rousseau and Renzi that product was missing from the commissary warehouse. In response to this report, defendants Rousseau and Renzi viewed the video footage recorded that day on the stationary surveillance cameras in the commissary warehouse. Two cameras recorded the incident from different angles. The footage shows the plaintiff working at the logging table sorting through the box of returned commissary items. His task was to determine whether the items should be discarded or returned to the line for sale.

The footage shows the plaintiff throwing certain items in the trash. Then he takes three bottles of shampoo/conditioner and one tube of toothpaste, slides his chair to the corner of the room, and places the items in a box in the corner of the room. Inmate Parrott helped the plaintiff conceal the items in the corner of the room.

Defendants Rousseau and Renzi determined that the only reason for the plaintiff to have secreted items in a box while working at the logging table was so that he could steal the items. They decided to discipline the plaintiff and inmate Parrott for their involvement in the theft by firing them from their jobs in the commissary warehouse.

The Commissary Unit Worker Policy provides that any inmate caught stealing or in possession of unauthorized commissary

4

items will be terminated and receive a disciplinary report. Because both inmates had good work history, defendants Rousseau and Renzi decided to be lenient and not issue disciplinary reports to the plaintiff and inmate Parrott.

During their employment with the Department of Correction, defendants Rousseau and Renzi have always fired inmates caught stealing. They have never knowingly rehired these inmates to work in the commissary.

### III. DISCUSSION

There are three claims remaining in this case, federal claims for retaliation and denial of equal protection and a state law defamation claim. In the April 11, 2017 Initial Review Order, the court dismissed the claims for deprivation of property and loss of a prison job. ECF No. 8.

#### A. Defendant Ide

The defendants move for summary judgment as to all claims against defendant Ide on the ground that he was not involved in the termination of the plaintiff's commissary job.

Although the plaintiff includes allegations against defendant Ide, his remaining claims relate to October 19, 2016, the day he was fired from his commissary job. Defendant Ide has submitted an affidavit stating that he retired from the Department of Correction in January 2016 and the plaintiff has submitted no contrary evidence.

5

Accordingly, the court concludes that defendant Ide was not involved in the October 2016 incident. Thus, the defendants' motion for summary judgment is being granted as to all claims against defendant Ide.

**B.　Retaliation**

The plaintiff's retaliation claim is based on his allegation that the defendants fired him from his commissary job after he complained that the commissary sold prohibited items.

To establish a Section 1983 claim for retaliation in contravention of the First Amendment, the plaintiff must demonstrate "(1) protected speech or conduct, (2) adverse action by defendant, and (3) a causal connection between the protected speech and the adverse action." Bilal v. White, 494 F. App'x 143, 146 (2d Cir. 2012). Even if the plaintiff presents evidence satisfying each element, the defendants may avoid liability by showing that they "would have disciplined the plaintiff even in the absence of the protected conduct." Id. (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks omitted).

Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts. Conclusory allegations of retaliatory conduct are not sufficient. See Dolan v. Connolly, 794 F.3d 290, 295 (2d Cir. 2015) ("First Amendment retaliation

6

claims brought by prisoners must 'be supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'") (quoting Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)).

Filing a grievance is a constitutionally protected activity and, therefore, can constitute the required protected conduct to support a retaliation claim. Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004). The plaintiff alleges that he made oral and written complaints. The court permitted the retaliation claim to proceed at the initial review stage based on the temporal proximity between the plaintiff's complaint and termination of his employment. Additional evidence is required, however, to survive summary judgment. See Washington v. Afify, 681 F. App'x 43, 46 (2d Cir. 2017) (noting that, although temporal proximity constitutes circumstantial evidence of retaliation, court has consistently required further evidence before retaliation claim can proceed to trial).

The defendants have filed affidavits stating that they did not terminate the plaintiff's employment in retaliation for his complaints. ECF Nos. 48-2 & 48-3. The plaintiff alleged in his verified complaint that he was fired for complaining about commissary practices, and he repeats these assertions in his affidavit. ECF No. 1, ¶¶ 16-21; ECF No. 56 at 11. He states that, when he returned to the commissary after an investigation

7

into the location of an item the plaintiff had purchased from the commissary and spoke to defendant Rousseau about wanting his money back for the purchase, defendant Rousseau told the plaintiff that he would not be there much longer.  The court has been presented with conflicting affidavits and cannot resolve such credibility issues on a motion for summary judgment.

The defendants contend that the plaintiff would have been terminated anyway for theft.  In addition to their affidavits, the defendants have submitted copies of surveillance footage showing the plaintiff putting several items in a box in the corner of the room.  The footage does not show the plaintiff removing any items from the commissary warehouse and the defendants do not state that he did so.  The defendants state, however, that they received a report from the commissary operator that items were missing from the commissary warehouse, so they imply that items had been removed.  The defendants also submit a copy of the Commissary Unit Worker Policy which provides that any commissary worker found to be "stealing … will be terminated and receive a disciplinary report."  ECF No. 48-2 at 9.  The plaintiff states, and the defendants concede, that the plaintiff was not issued a disciplinary report as a result of this incident.

The defendants state that they were being lenient by not issuing a disciplinary report because the plaintiff had a good

work history, but provide no evidence that the provision in the policy is discretionary. In addition, the Offender Work Performance & Program Removal Form completed by the defendants indicates that the plaintiff's overall performance was poor. He had good attendance but only fair initiative and productivity and a poor attitude. ECF No. 48-2 at 11. This appears to contradict defendant Rousseau's statement in his affidavit that the reason the plaintiff was not issued a disciplinary report was his good work history. ECF No. 48-2 at 4, ¶ 15.

Both parties state that the plaintiff was terminated for theft, not attempted theft. The list of offenses in the Code of Penal Discipline, Connecticut Department of Correction Administrative Directive 9.5, Sections 12(DD) and 13(K), defines theft as "[s]tealing or possessing stolen property." https://portal.ct.gov.DOC/AD/AD-Chapter-9 (last visited June 21, 2018). Attempt is deemed to be included in the substantive offense and does not have to be separately charged. Id. Section 11. As the defendants present no evidence regarding the definition of "stealing" as used in the Commissary Unit Worker Policy, the court cannot determine whether items are considered stolen if they never were removed from the commissary warehouse, or if the definitions in the Code of Penal Disciplinary apply and an attempt is sufficient.

The plaintiff has submitted no admissible contrary

9

evidence[2]; he merely denies any theft.  Based on the video
surveillance footage, which shows that the plaintiff placed
items in a box in the corner, the defendants' failure to follow
policy and issue a disciplinary report for theft, the seeming
contradiction between the plaintiff's work performance rating
and the reason given for not issuing a disciplinary report, and
the plaintiff's denials, the court cannot determine as a matter
of law that the defendants' assumption that the plaintiff was
stealing was the reason for his termination.  As the court
cannot determine at this time that the plaintiff would have been
terminated from his position for theft regardless of his
complaints about commissary policy, the defendants' motion for
summary judgment is being denied as to the retaliation claim.

**C.    Equal Protection**

The plaintiff's equal protection claim is based on his
allegation that only African-American or Hispanic inmates are
terminated from prison jobs.

The Equal Protection Clause protects prisoners from
invidious discrimination.  This provision does not mandate
identical treatment for each individual; rather it requires that
similarly situated persons be treated the same.  City of

---

[2] The plaintiff submits the affidavit of inmate John Ferreira who states that, the week before the plaintiff was fired, he overheard a supervisor tell inmate Parrott to hold damaged cosmetics until he had enough to put in the "C/O O/M" instead of constantly running back and forth.  ECF No. 56 at 12. As this statement is hearsay, it is inadmissible.

Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439-40 (1985). To establish an equal protection claim, the plaintiff must show that he was treated differently from similarly situated individuals and that the reason for the different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000) (quoting LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980)). A plaintiff can demonstrate an equal protection violation by "point[ing] to a law or policy that expressly classifies persons on the basis of race," "identify[ing] a facially neutral law or policy that has been applied in an intentionally discriminatory manner," or "alleg[ing] that a facially neutral statute or policy has an adverse effect and it was motivated by discriminatory animus." Anderson v. Waterbury Police Dep't, No. 14-CV-829 (VAB), 2017 WL 1157843, at *9 (D. Conn. Mar. 28, 2017)(quoting Brown v. City of Oneonta, N.Y., 221 F.3d 329, 337 (2d Cir. 2000)(internal quotation marks omitted).

The plaintiff includes in his verified complaint a general allegation that "the only people the defendants fired are African American and Hispanic." ECF No. 1, ¶ 20. The court considers this an equal protection claim that he was treated differently because of his race.

The defendants appear to construe this claim as a class of one equal protection claim. In their memorandum, the defendants argue that the plaintiff has not identified any commissary workers who were caught stealing but permitted to keep their jobs. The plaintiff, however, alleges that he was fired from his job because of his race and, in opposition to the motion for summary judgment,[3] submits inmate Ferreira's affidavit. Inmate Ferreira states that he worked in the Cheshire Commissary for two years and, during that time, defendants Renzi and Rousseau fired six African American or Hispanic inmates. He never witnessed a Caucasian inmate being fired. ECF No. 56 at 12.

The defendants do not address this class-based equal protection claim in their memorandum. Defendants Renzi and Rousseau state in their affidavits that they always fire any inmate caught stealing items from the commissary. ECF No. 48-2 at 4, ¶ 16 & 48-3 at 3, ¶14. Without evidence regarding the number of inmates fired and the race of those inmates, these statements are insufficient to show that the terminations are

---

[3] The plaintiff argues, through assistance of an attorney at Inmates' Legal Aid Program, that he has been unable to obtain affidavits due to his incarceration and should not be penalized. ECF No. 56 at 6. The plaintiff was provided a copy of Federal Rule of Civil Procedure 56 as part of the defendants' Notice to Pro Se Litigant. ECF No. 48-6. Rule 56(d) provides that, if facts are not available to the nonmoving party, that party must so notify the court by filing an affidavit or declaration explaining why he is unable to present facts to justify his opposition to the motion. The plaintiff did not submit the required affidavit or declaration. Thus, any attempted excuse for not submitting more expansive opposition papers is unavailing.

12

not class-based. The defendants' motion for summary judgment is being denied as to the equal protection claim.

   D.   **Qualified Immunity**

The defendants argue that they are shielded from liability by the doctrine of qualified immunity. Qualified immunity protects government officials from civil damages liability "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" District of Columbia v. Wesby, ___ U.S. ___, 138 S. Ct. 577, 589 (2018) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)). When analyzing a claim of qualified immunity, the court must determine whether the defendant did in fact violate a constitutional right and whether the contours of that right were "sufficiently clear that a reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, --- U.S. ----, 136 S. Ct. 305, 314-15 (2015) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001) (internal quotation marks omitted)). The district court has the discretion to determine, in light of the particular circumstances surrounding the case, which of the two prongs of the qualified immunity standard to address first. Johnson v. Perry, 859 F.3d 156, 170 (2d Cir. 2017) (quoting Pearson v. Callahan, 555 U.S. 223, 236 (2009)).

Qualified immunity does not apply if the court finds the contours of the right allegedly violated are "'sufficiently definite that any reasonable official in [the defendant's] shoes would have understood that he was violating it,' meaning that 'existing precedent ... placed the statutory or constitutional question beyond debate.'" City & Cty. of San Francisco, Calif. v. Sheehan, --- U.S. ----, 135 S. Ct. 1765, 1774 (2015) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). The existing precedent must be decisional law of the Supreme Court or the Second Circuit. See African Trade & Information Center, Inc. v. Abromaitis, 294 F.3d 355, 360 (2d Cir. 2002) (noting that a factor "considered in evaluating whether a right was clearly established at the time a § 1983 defendant acted" is "whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question"). The Supreme Court does not require that the exact actions have previously been held unconstitutional. However, "[r]ights must be clearly established in a 'particularized' sense, rather than at a high level of generality; and such rights are only clearly established if a court can 'identify a case where an offic[ial] acting under similar circumstances' was held to have acted unconstitutionally." White v. Pauly, --- U.S. ----, 137 S. Ct. 548, 552 (2017).

"The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." Wesby, 138 S. Ct. at 590. That is, "the rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id. (quoting Saucier, 533 U.S. at 202). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law." Sheehan, 135 S. Ct. at 1774 (quoting al-Kidd, 563 U.S. at 744); Grice v. McVeigh, 873 F.3d 162, 166 (2d Cir. 2017) (qualified immunity standard is forgiving, protecting all but those who are plainly incompetent or who knowingly violate the law) (citations omitted).

The qualified immunity standard is objective. The question is not whether the defendant acted in good faith or what the defendant knew or believed, but rather what would have been known to or believed by a reasonable officer in the defendant's position. Outlaw v. City of Hartford, 884 F.3d 351, 367 (2d Cir. 2018). This is a mixed question of law and fact. Id. (quoting Kerman v. City of New York, 374 F.3d 93, 109 (2d Cir. 2004)). Any dispute regarding the material historical facts must be resolved by the factfinder. Id. (quoting Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007)). Once those facts

15

are determined, the court "may 'make the ultimate legal determination of whether qualified immunity attaches *on those facts*.'" Id. (quoting Kerman, 374 F.3d at 109); see, e.g., Zellner, 494 F.3d at 368 ("Once the [factfinder] has resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court.").

The defendants argue that they are protected by qualified immunity for three reasons: (1) the plaintiff does not have a clearly established right to steal items from the commissary, (2) it was objectively reasonable for the defendants to assume they were not violating the plaintiff's rights by firing him based on the video surveillance evidence, and (3) it was reasonable for the defendants to believe that the plaintiff was secreting items to steal them. The plaintiff does not address the applicability of qualified immunity in his memorandum. He merely argues that qualified immunity should be denied because he should receive damages if the defendants violated his rights.

The plaintiff's claim is that he was fired in retaliation for complaining about commissary practices, i.e., that the theft accusation was pretextual. The Second Circuit has questioned the applicability of qualified immunity defenses to First Amendment retaliation claims. See Washington v. Gonyea, 538 F.

App'x 23, 27 (2d Cir. 2001) (summ. order). In Washington, the court reasoned that such claims explicitly require an improper retaliatory motive on the part of the defendant, and "'where a more specific intent is actually an element of the plaintiff's claim as defined by clearly established law, it can never be objectively reasonable for a government official to act with the intent that is prohibited by law.'" Id. (quoting Locurto v. Safir, 264 F.3d 154, 169 (2d Cir. 2001) (noting that "a plaintiff need only show particularized evidence of direct or circumstantial facts supporting his claim of unconstitutional motive in order to survive a motion for summary judgment on the defense of qualified immunity.") (internal quotation marks omitted)); see also Torres v. LaLota, No. 15-CV-157097 (JMA)(AYS), 2017 WL 4457514, at *9 (E.D.N.Y. Aug. 14, 2017), report and recommendation adopted, 2017 WL 4443578 (E.D.N.Y. Sept. 30, 2017).

Here, the Court has determined that there are genuine issues of material fact with respect to the defendants' motive in terminating the plaintiff from his job. Consequently, the defendants are not entitled to qualified immunity at this time.

**E. Defamation**

The plaintiff's defamation claim is based on the fact that the theft allegation is mentioned whenever he applies for a prison job. As the court cannot, at this time, determine

17

whether the theft allegation is true, the defamation claim will remain pending.

**VI. <u>CONCLUSION</u>**

The defendants' motion for summary judgment [ECF No. 48] is hereby GRANTED as to defendant Ide on all remaining claims against him and DENIED in all other respects.

It is so ordered.

Signed this 10th day of July 2018 at Hartford, Connecticut.

<pre>                      /s/AWT              
                  Alvin W. Thompson
               United States District Judge</pre>